IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E. FRED SCHUBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-923-GMS |
| ) | |
| OSRAM AG, OSRAM OPTO ) | |
| SEMICONDUCTORS GMBH, OSRAM ) | |
| OPTO SEMICONDUCTORS, INC., and ) | |
| OSRAM SYLVANIA INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

### I. INTRODUCTION

On July 18, 2012 the plaintiff, E. Fred Schubert ("Schubert"), filed this lawsuit against the defendants, OSRAM AG, OSRAM Opto Semiconductors GmbH, OSRAM Opto Semiconductors, Inc., and OSRAM Sylvania Inc. ("Sylvania") (collectively, "OSRAM"), alleging infringement of U.S. Patent No. 6,294,475 (the "'475 Patent"). (D.I. 1.) OSRAM filed its Answer on November 7, 2012, (D.I. 8), and, on that same day, filed the present Motion to Transfer Venue to the District of Massachusetts, (D.I. 10). For the reasons that follow, the court will deny OSRAM's motion.

### II. BACKGROUND

Schubert is a resident of Troy, New York and a researcher and educator in the field of gallium nitride ("GaN") optoelectronic semiconductor devices such as light emitting diodes ("LEDs"). (D.I. 1 at ¶¶ 2, 5.) He is a Professor of Electrical Engineering at Rensselaer

Polytechnic Institute ("RPI") as well as the Founding Director of the Smart Lighting Engineering Research Center at RPI. (*Id.* at ¶ 5.) Schubert is also the owner of the '475 Patent. (*Id.* at ¶ 14.)

OSRAM AG is a German corporation having its principal place of business in Munich, Germany. (*Id.* at ¶ 7.) OSRAM Opto Semiconductors GmbH is also a German corporation and is headquartered in Regensburg, Germany. (*Id.* at ¶ 8.) Both OSRAM Opto Semiconductors, Inc. and Sylvania are Delaware corporations, with the former headquartered in Sunnyvale, California and the latter based in Danvers, Massachusetts. (*Id.* at ¶¶ 9–10.)

Schubert contends that OSRAM infringes the '475 Patent by producing and selling "high-brightness GaN-based LEDs, including . . . LEDs incorporating technology known as 'ThinGaN.'" (*Id.* at ¶ 18.) Schubert has filed two additional infringement actions in this district against separate defendants also alleging infringement of the '475 Patent.[1]

## III. STANDARD OF REVIEW[2]

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision grants the court "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir.1995).

In resolving a motion to transfer, the court undertakes a two-step inquiry. It first determines whether the action could have been brought originally in the proposed transferee

---

[1] *Schubert v. Cree, Inc.*, No. 12-922-GMS; *Schubert v. Koninklijke Philips Elecs. N.V., et al.*, No. 12-924-GMS.

[2] The court recites the standard set forth in another memorandum issued this same date, which considered a similar motion to transfer in one of the related actions, *Schubert v. Cree, Inc.*, No. 12-922-GMS.

forum and then asks whether transfer would best serve the interests of convenience and justice. *Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5865742, at *1 (D. Del. Nov. 16, 2012). The defendant bears the burden at each step of the analysis, *Jumara*, 55 F.3d at 879–80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

The court first considers whether this action could have been brought initially in the proposed transferee forum and then turns to the required balance of convenience analysis.

### A. Propriety of the Transferee Venue

Under § 1404(a), the court may transfer an action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, the court may only order transfer to the District of Massachusetts if venue would have been proper there and if that court could have exercised personal and subject matter jurisdiction. *See Smart Audio Techs.*, 2012 WL 5865742, at *5; 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed.2012).

In this case, subject matter jurisdiction would have existed given the nature of the litigation, *see* 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ."), and venue would have been proper in the District of Massachusetts to the extent that the court could have exercised personal jurisdiction over the defendants, *see* 28 U.S.C. §§ 1400(b), 1391(c).

It is less clear, however, that personal jurisdiction would have existed over OSRAM Opto Semiconductors GmbH and OSRAM AG, the two German defendants. On this point, OSRAM

simply states that "[b]oth have greater ties to Massachusetts (where Sylvania is located) than to Delaware (where no OSRAM entity is located); regardless, for purposes of this case only, all defendants consent to jurisdiction in Massachusetts." The court, however, is unconvinced that that either of these facts resolves the jurisdictional question here. When examining personal jurisdiction, the court does not ask whether a defendant has greater ties to one state or another— the court asks (1) whether jurisdiction is authorized under the long-arm statute of the state in which it sits and (2) whether exercise of that jurisdiction is consistent with the guarantees of due process. *See Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1368–69 (Fed. Cir. 2010). Likewise, the fact that all of the defendants here consent to jurisdiction in Massachusetts is irrelevant. As the court has previously explained:

> It does not matter that [the defendant] might have waived any personal jurisdiction defense had [the plaintiff] filed this action in [the proposed transferee forum]. The Supreme Court has noted that, in determining whether an action "might have been brought" in a proposed transferee venue, a district court must look to the state of the world at the time of filing rather than relying on hindsight knowledge of the defendant's forum preference. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Court stated, "[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." 363 U.S. at 343–44.
>
> Of course, the 2011 amendment to § 1404(a) added that a district court may also transfer an action "to any district or division to which all parties have consented," thereby abrogating in part the *Hoffman* decision—no longer is personal jurisdiction over the defendant required where all parties consent to the transferee forum. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. This, however, is not a case in which all parties have consented. [The plaintiff] opposes this motion, and, as such, the court may only transfer the case if it could have been brought originally in [the proposed transferee forum]. Because [the defendant's] consent plays no role in this particular type of transfer decision, the court believes the logic of *Hoffman* continues to apply and that the personal jurisdiction requirement cannot be satisfied by a hypothetical waiver.

4

*Guzzetti v. Citrix Online Holdings GmbH*, No. 12-01152-GMS, 2013 WL 124127, at *3 n.2 (D. Del. Jan. 3, 2012). As such, the court is not convinced that OSRAM can meet this threshold requirement. Still, it need not resolve the jurisdictional question here—regardless of the court's decision, for the reasons outlined below, the second prong of the § 1404(a) inquiry would preclude transfer of this action.

B. *Jumara* Analysis

In determining whether the interests of convenience and justice favor transfer, the Third Circuit has instructed courts to perform an individualized assessment of the various public and private interests protected by § 1404(a), rather than applying any "definitive formula."[3] *See Jumara*, 55 F.3d at 879. The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court will consider each of the contested "*Jumara* factors" in turn.

    1.    Private interest factors

        a.    Plaintiff's forum preference

---

[3] "The law of the Third Circuit governs the court's decision on a motion to transfer pursuant to 28 U.S.C. § 1404(a)." *Smart Audio Techs.*, 2012 WL 5865742, at *2 n.2 (citing *In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011)).

The first *Jumara* factor is the "plaintiff's forum preference as manifested in the original choice." *Id.* at 879. Though this consideration is often given significant weight in the transfer inquiry, the court has recognized that it merits less deference where the plaintiff has chosen to file suit outside his "home turf." *See, e.g., Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013); *Smart Audio Techs.*, 2012 WL 5865742, at *6–7; *see also In re Link-A-Media Devices Corp.*, 662 F.3d at 1223 ("When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference."). OSRAM relies on this exception to argue that little weight should be given to the Delaware forum selection of Schubert, a Massachusetts resident. (D.I. 11 at 8.)

Schubert, however, correctly notes that a plaintiff's venue choice is entitled to at least some degree of heightened deference, so long as "rational and legitimate" reasons underlie the selection. *See Smart Audio Techs.*, 2012 WL 5865742, at *6. Here, Schubert emphasizes that he is currently litigating two related cases in this district and suggests that Delaware represents a "convenient, centralized forum for *all* parties to litigate infringement of the '475 Patent." (D.I. 15 at 7.) He also notes that "two of the four OSRAM defendants are incorporated in Delaware." (*Id.*) The court agrees that these are rational reasons for choosing to file suit in this district and outside Schubert's "home turf" of New York.[4] While his forum selection is not entitled to

---

[4] OSRAM suggests that the presence of co-pending, related actions does not rise to the level of a "rational and legitimate" reason, noting that Schubert filed the three lawsuits simultaneously and could just as easily have filed them in a number of other venues including Massachusetts. (D.I. 17 at 3.) The court agrees with OSRAM on this point—the mere fact that a plaintiff chooses to file multiple related actions together in one district does not, by itself, constitute a "rational and legitimate" reason for choosing that forum.

The court, however, does not understand that to be the substance of Schubert's argument. Rather, the court notes that Schubert has identified additional reasons for choosing Delaware—namely, its central location and the fact that it represents the corporate home of two of the OSRAM defendants. (D.I. 15 at 7.) These are independent grounds for Schubert's forum selection and, more significantly, grounds that existed *prior to* his filing of the related actions. So long as there exist such independent, prior reasons for choosing to file at least one of a group of related

"paramount consideration," it is given significant weight in the convenience analysis.

                b.        Defendant's forum preference

The court next looks to the defendant's choice of forum. *Jumara*, 55 F.3d at 879. Here, OSRAM has expressed a desire for this action to proceed in the District of Massachusetts. As such, this factor weighs in favor of transfer.

                c.        Whether the claim arose elsewhere

The third factor is "whether the claim arose elsewhere." *Id.* "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7. Accordingly, where an accused infringer operates on a national or global scope, this factor is generally neutral.

While OSRAM seems to concede that its accused products are sold globally, it nevertheless contends that the infringement claim arises in Massachusetts. In support of this position, OSRAM points out that (1) "the allegedly infringing sales are believed to have occurred largely through Sylvania's general lighting sales organization, headquartered in Massachusetts" and (2) the "alleged inventive activity occurred at Boston University . . . and a Boston law firm handled the prosecution of the '475 Patent." (D.I. 11 at 8–9.) The court does not find either argument to be persuasive. While the court has acknowledged that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured," *Smart Audio Techs.*, 2012 WL 5865742, at *7 (quoting *Wacoh Co. v. Kionix,*

---

cases in a particular forum, the court can appreciate and credit a plaintiff's desire to proceed with the other related cases in the same district.

*Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)), OSRAM does not claim that development or production of its accused products occurred in Massachusetts.[5] Rather, OSRAM merely indicates that most of its U.S. *sales* are thought to have occurred through Sylvania, which is headquartered in Massachusetts.[6] The court is also skeptical of OSRAM's second argument on this issue, as the present *Jumara* factor asks where the *claim* arose—that the patent-in-suit may have some other connection to a particular state is irrelevant.

d. Convenience of the parties

The court next looks to "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Considerations relevant to this inquiry include: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *6 (D. Del. Aug. 20, 2012) (quoting *Fuisz Pharma v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *12 (D. Del. May 18, 2012)).

OSRAM contends that the District of Massachusetts is clearly more convenient for all parties involved, as Sylvania is located in Danvers, Massachusetts and even Schubert resides closer to that district than to Delaware. While the court appreciates OSRAM's argument on this

---

[5] According to Schubert, its prelitigation correspondence with Sylvania suggests that OSRAM Opto Semiconductors GmbH actually manufactures the accused products in Germany. (D.I. 15 at 9.)

[6] If the court were simply to ask where the defendant responsible for the majority of allegedly infringing sales was based, the general rule announced above—that, where an accused infringer operates on a national or worldwide scale, this factor is typically neutral—would cease being a general rule. Moreover, OSRAM's operations appear to be quite geographically dispersed, with design and manufacture occurring overseas and U.S. sales being conducted by subsidiaries in both California and Massachusetts. (D.I. 11 at 2; D.I. 15 at 9–10.) It is somewhat arbitrary to select Massachusetts as the center of the alleged infringement.

point and acknowledges that, at least in terms of distance, Massachusetts does appear more convenient, it will assign this factor only minimal weight for two reasons. First, the court notes that the distance between the two fora is relatively small, reducing any potential convenience benefits that may flow from transfer. Moreover, the court has recognized that a defendant incorporated in Delaware should generally not be heard to argue that litigating in this district is inconvenient. *See, e.g., Linex Techs., Inc.*, 2013 WL 105323, at *4; *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012). Two of the defendants here are Delaware corporations and thus face an uphill battle in contending that Delaware represents an inconvenient forum.[7] As such, this factor weighs only lightly in favor of transfer.

e. Convenience of witnesses

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. "Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Moreover, the court has recognized that this factor should only be given weight "when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs.*, 2012 WL 5865742, at *8.

OSRAM identifies three categories of potential witnesses that it suggests are more likely to be found within the subpoena power of a Massachusetts federal court: (1) individuals with

---

[7] The court is cognizant of *In re Link-A-Media*'s warning to avoid weighing a defendant's state of incorporation too heavily in the transfer analysis and does not believe it has done so here. While the fact that OSRAM Opto Semiconductors, Inc. and Sylvania are Delaware corporations certainly affects the court's assessment of this one *Jumara* consideration, neither this one fact nor even the "convenience of parties" factor itself is dispositive of OSRAM's motion.

9

knowledge of the alleged inventive activity, which occurred at Boston University, (2) individuals involved in the prosecution of the '475 Patent, and (3) persons associated with Boston University having knowledge about the transfer of patent rights, as the university was the original assignee of the rights to the '475 Patent. (D.I. 11 at 11–12.) Schubert, however, notes that OSRAM has failed to demonstrate that any of these potential witnesses would actually be unavailable for trial in Delaware. (D.I. 15 at 12–13.)

The court believes this factor weighs slightly in favor of transfer. Though Schubert is correct in observing that "[i]t is the defendant's burden to show both the unavailability of a particular witness and that witness' importance to the defendant's case," *Smart Audio Techs.*, 2012 WL 5865742, at *8 (quoting *Tessera, Inc. v. Sony Elecs., Inc.*, 10-838-RMB, 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012)), the court notes that OSRAM has provided at least some support for its position. OSRAM has explained why the testimony of its potential witnesses may be necessary, emphasized that it has no prior relationship with these individuals that might compel them to testify, and pointed out that travel from Massachusetts to Delaware would at least present some moderate inconvenience. (D.I. 11 at 11–12.) This factor is granted only minimal weight, however, as OSRAM has failed to individually identify most of these potential witnesses or present evidence of unavailability that might allow the court to do more than draw a reasonable inference that prospective witnesses may refuse to testify in this district.[8]

f.  Location of books and records

Finally, the Third Circuit has instructed courts to consider "the location of books and

---

[8] Furthemore, courts in this district have noted that "the practical impact of this factor is limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live)." *Pragmatus AV, LLC v. YahooA Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438, at *10 (D. Del. Oct. 15, 2012) (citing *Cellectis*, 858 F. Supp. 2d at 382 n.6; *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757–58 (D. Del. 2012)), *recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013).

records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara,* 55 F.3d at 879. The court recognizes that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Smart Audio Techs.*, 2012 WL 5865742, at *9. Though modern technology allowing for the electronic storage and transfer of documents reduces the significance of this factor, the court nevertheless must give it some measure of weight in its *Jumara* analysis. *See In re Link-A-Media Devices Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 2012 WL 5865742, at *9.

Here, this final private interest factor clearly leans in favor of transfer given the fact that one of the defendants is headquartered in Massachusetts while none are based in Delaware. It is given only minimal weight, however, due to (1) the ease with which documents can now be moved across the country electronically and (2) the fact that this action involves multiple defendants and only one can be expected to have records in Massachusetts. Given the nature of the case, it is just as likely that relevant documents will be found in Germany, where OSRAM Opto Semiconductors GmbH apparently manufactures the accused products. (D.I. 15 at 9.)

### 2. Public interest factors

Both OSRAM and Schubert acknowledge that several of the public interest factors are inapplicable to the court's transfer analysis in this case.[9] The court will address only those factors in dispute.

---

[9] The parties do not contest the public interest factors addressing the enforceability of the judgment, the public policies of the prospective fora, and the familiarity of the court with applicable state law. (D.I. 11 at 13–14; D.I. 15 at 14.)

11

a.  Practical considerations

The court first looks to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. OSRAM argues that this factor favors transfer, repeating several of the arguments it employed in the "party convenience" private interest debate. (D.I. 11 at 14.) Schubert contends that the existence of related, co-pending lawsuits in this district swing this factor in the opposite direction. (D.I. 15 at 14–17.)

The court agrees with Schubert here. OSRAM focuses too narrowly on the issue of whether proceeding in Massachusetts would be more convenient for the litigants. The "practical considerations" factor, however, is a *public* interest factor and demands that at least some attention is given to the public costs of litigation. *See AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *5 (D. Del. Oct. 19, 2012). The time invested by the court in a case is one such public cost, and Schubert rightly notes that keeping this action in Delaware, along with the two related cases, will likely allow the court to develop some degree of familiarity with the '475 Patent, the underlying technology, and the relevant industry. *See id.* As such, this factor weighs strongly against transfer.[10]

b.  Relative administrative difficulty

The Third Circuit has also instructed courts to consider "the relative administrative

---

[10] OSRAM cites the Federal Circuit's decision in *In re Morgan Stanley*, Nos. 962, 964, 967, 417 F. App'x 947 (Fed. Cir. 2011), for the proposition that "[e]ven where a court has developed familiarity with a patent, preserving judicial economy by keeping a case before that court is an insufficient basis to avoid transfer to a far more convenient venue." (D.I. 11 at 15.) Setting aside the fact that *In re Morgan Stanley* interpreted Fifth Circuit law, *see* 417 F. App'x at 948, the court still does not believe that decision would control here—OSRAM simply has not demonstrated that Massachusetts represents a "far more convenient venue," and certainly has not done so to the extent discussed in *In re Morgan Stanley, see id.* at 949 (granting petitions for mandamus where "the plaintiff and 27 defendants are headquartered in or close by the transferee venue, . . . the inventors, patent prosecution attorneys, and the defendants' employees . . . reside in or near the transferee venue . . . [and] no party is headquartered within a hundred miles of the [transferor forum]").

12

difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. On this point, OSRAM suggests that the District of Massachusetts has a less congested docket than the District of Delaware, citing 2011 case statistics. (D.I. 11 at 16.) For example, it notes that "Delaware judges' dockets have had on average about 196 more civil cases, including 139 more patent cases, and only 4 fewer criminal cases per judge than Massachusetts judges." (*Id.*) OSRAM fails to demonstrate, however, that the sheer number of patent cases in Delaware will result in any material administrative difficulty, increase the time to trial, or prejudice the parties in any way. As such, the court weighs this factor only lightly in favor of transfer.

c. Local interests

The court also balances "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Here, OSRAM suggests that Massachusetts has a local interest in this dispute, arguing that "Schubert's claims arise out of alleged inventive activity at Boston University while he was a professor there and are directed to allegedly infringing activity that largely emanates from Sylvania in Massachusetts." (D.I. 11 at 16.) An infringement action, however, is not properly characterized as a "local controversy" simply because the litigation presents a matter of local interest in a defendant's home state. *See Smart Audio Techs.*, 2012 WL 5865742, at *10. The court's view of this issue corresponds with the position recently expressed by Judge Robinson:

> [P]atent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012). This patent infringement action is more properly described as a national controversy, and the court therefore finds that this factor is neutral. *See Smart Audio Techs.*, 2012 WL 5865742, at *10 ("This is a lawsuit governed by federal law, brought against a multinational corporation, and concerning a product that is sold and used nationwide. It is truly a national controversy . . . .").

### 3. *Jumara* analysis summary

In sum, the plaintiff's forum selection and practical considerations both weigh strongly against transfer, though the former is not given the "paramount consideration" to which it is sometimes entitled. Four of the five remaining private interest considerations weigh in favor of transfer, albeit the defendant's forum selection receives less deference than the plaintiff's, and the other three factors are given only reduced weight. The administrative difficulty public interest factor likewise weighs gently in OSRAM's favor, while the remaining considerations are neutral or inapplicable.

This motion presents a close issue—one that is best decided by reference to the governing standard. As noted above, it is OSRAM's burden to demonstrate that the balance of convenience *strongly* favors transfer to the District of Massachusetts. While the court acknowledges that Massachusetts may well present a more convenient venue for this litigation, it cannot conclude that OSRAM has met this burden.

## V. CONCLUSION

For the reasons discussed above, the court will deny OSRAM's Motion to Transfer Venue to the District of Massachusetts (D.I. 10).

Dated: February 14, 2013

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E. FRED SCHUBERT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OSRAM AG, OSRAM OPTO )<br>SEMICONDUCTORS GMBH, OSRAM )<br>OPTO SEMICONDUCTORS, INC., and )<br>OSRAM SYLVANIA INC., )<br>)<br>Defendants. )<br>) | Civil Action No. 12-923-GMS |

**ORDER**

At Wilmington this 14th day of February 2013, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

The defendant's Motion to Transfer Venue to the District of Massachusetts (D.I. 10) is DENIED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE